## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *LAURISTON R. CROCKER,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 07-220-P-S* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges that he is disabled by left inguinal pain in the wake of several inguinal-hernia surgeries, is capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment, left inguinal pain, status post multiple surgeries for recurrent inguinal hernias, Finding 3, Record at 20;

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 19, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

that he retained the residual functional capacity ("RFC") to lift and carry ten pounds frequently and twenty pounds occasionally, sit for at least six hours in an eight-hour workday, stand for at least six hours in an eight-hour workday, walk for at least six hours in an eight-hour workday, and climb, balance, stoop, kneel, crouch, and crawl occasionally, Finding 5, *id*. at 21; that, considering his age (a younger individual), education (tenth grade), work experience (transferability of job skills immaterial), and RFC, and using Rule 202.18 of Table 2, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid") as a framework, jobs existed in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 23-24; and, therefore, that he had not been under a disability through the date of decision, Finding 11, *id*. at 24.[2]   The Appeals Council declined to review the decision, *id*. at 5-8, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.   42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).   In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.   *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.   20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.   The record must contain positive evidence in support of the

---

[2] The plaintiff met the insured-status requirements of the Social Security Act through March 31, 2009.  *See* Finding 1, *(continued on next page)*

commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff contends that the administrative law judge erred in (i) failing to make a finding as to the type and extent of his pain limitations, precluding a reviewing court from determining whether her exclusive reliance on the Grid was error, (ii) omitting to analyze the plaintiff's claimed chronic pain properly pursuant to *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986), and making an unsupportable credibility finding, and (iii) failing to evaluate treating source opinions in accordance with 20 C.F.R. § 404.1527(d).  *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 7).  I discern no reversible error.

## I.  Discussion

### A.  Failure To Evaluate Type, Extent of Pain-Related Limitations

As the plaintiff suggests, *see id.* at 2, use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile, *see, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983).  When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a streamlined method by which the commissioner can meet her burden of showing there is other work a claimant can perform.  *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991).  However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do.  *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).[3]  Whether the commissioner may rely on the Grid in these

---

Record at 20.

[3] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, *(continued on next page)*

circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet his Step 5 burden but must employ other means, typically the use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id.* "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

In his first point of error, the plaintiff complains that the administrative law judge made insufficient findings concerning nonexertional limitations to enable a reviewing court to determine whether she properly relied solely on the Grid to reach the conclusion that he was not disabled. *See* Statement of Errors at 2-3. For that proposition he cites *Makuch v. Halter*, 170 F. Supp.2d 117, 128 (D. Mass. 2001). *See id.* at 2. In *Makuch*, the United States District Court for the District of Massachusetts stated:

> It follows from the . . . restrictions on the use of the Grids that the ALJ must make a specific finding as to the type and extent of the limitation created by the pain so that the reviewing court can determine whether or not the use of the Grid was error. The ALJ found only that Makuch's ". . . back pain due to degenerative disc disease is a

---

pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2007) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id.* "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id.*

> severe impairment . . .", leaving in question the type(s) of restrictions caused by the pain.
>
> . . . The ALJ's failure to make a specific finding as to whether or not Makuch's impairment created a significant non-exertional limitation is cause to remand because it makes it impossible for this court to determine whether or not the ALJ was required to consult the vocational expert about those limitations before making his final disability determination.

*Makuch*, 170 F. Supp.2d at 128-29 (citations omitted).

In this case, however, unlike in *Makuch*, the administrative law judge did find that the plaintiff's chronic pain condition caused certain nonexertional limitations, specifically that it foreclosed more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling. *See* Finding 5, Record at 21. She then went on to determine that reliance on the Grid nonetheless remained appropriate because "the additional limitations have little or no effect on the occupational base of unskilled light work." *Id*. at 24. In so doing, she made all findings related to nonexertional impairments that the *Makuch* court suggests an administrative law judge should make before relying exclusively on the Grid at Step 5.

The plaintiff acknowledges, in a roundabout way, that the administrative law judge did in fact make some findings of nonexertional restrictions, which in turn were supported by the Disability Determination Services ("DDS") RFC reports of record. *See* Statement of Errors at 2; *compare* Finding 5, Record at 21 *with id*. at 266-73 (RFC assessment dated November 4, 2004), 279-86 (RFC assessment dated May 6, 2005).[4] Nonetheless, he suggests that the administrative law judge's reliance on those reports was misplaced, inasmuch as the reviewers, whose reports predated the plaintiff's hearing, did not have the benefit of his testimony describing marked nonexertional

---

[4] It is unclear to me whether the two DDS reports are those of physicians; neither reviewer supplies a title. *See* Record at 273, 286. However, the plaintiff makes no issue of this in his Statement of Errors.

restrictions, for example, that he was unable to reach, grab, bend over, or turn his body. *See* Statement of Errors at 2-3 & n.2; *see also* Record at 47-48, 52. It is true that the reports of non-testifying, non-examining physicians do not necessarily serve as substantial evidence. *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted). However, in this case, in which, as discussed below, the administrative law judge supportably discounted the plaintiff's testimony concerning the nature and extent of his restrictions, the fact that DDS reviewers did not have the benefit of that testimony does not render their reports incapable of standing as substantial evidence of a claimant's RFC.[5]

## B. Flawed *Avery*, Credibility Analyses

The plaintiff next complains that the administrative law judge (i) failed to evaluate his subjective complaints of pain in accordance with the so-called *Avery* factors, set forth in *Avery* and in 20 C.F.R. § 404.1529(c) and Social Security Ruling 96-7p ("SSR 96-7p"), and (ii) undertook a

---

[5] At oral argument, the plaintiff's counsel also contended that the DDS reviewers' reports could not serve as substantial evidence of the plaintiff's RFC because the underlying treatment notes that they reviewed were themselves unhelpfully terse. This point was raised for the first time at oral argument and accordingly is deemed waived. *See Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In any event, even if this argument were cognizable, it would not help the plaintiff. If it were true that the terseness of treatment notes deprived DDS reviewers of sufficient information to make judgments about RFC, virtually no reports of non-examining medical experts could serve as substantial evidence in a Social Security case. That is not the law in the First Circuit. *See, e.g., Rose*, 34 F.3d at 18.

cursory, flawed credibility analysis. *See* Statement of Errors at 3-9. I discern no reversible error.

The commissioner is required to consider all of a claimant's symptoms, including pain, when determining whether a claimant is disabled. *See, e.g.,* 20 C.F.R. § 404.1529(a). In assessing whether pain or other symptoms restrict a claimant's ability to work, the commissioner must first determine whether there is a medically determinable impairment that could reasonably be expected to produce such symptoms. *See, e.g.,* 42 U.S.C. § 423(d)(5)(A); *Avery,* 797 F.2d at 21; SSR 96-7p, *reprinted in West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2007), at 134. "If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities." SSR 96-7p at 134.

If, on the other hand, a claimant demonstrates the existence of a medically determinable impairment that could reasonably be expected to cause the symptoms alleged, the commissioner must give full consideration to all of the available objective medical evidence that reflects on the impairment to evaluate the degree of functional limitation caused by the symptoms. *See, e.g.,* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c)(2); *Avery,* 797 F.2d at 21, 23. The commissioner must also, in reaching this second step, consider a claimant's subjective complaints. *See, e.g.,* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p at 134-35. "Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's

7

statements . . . ."  SSR 96-7p at 133.[6]

The adjudicator is free to determine that a claimant's testimony regarding his pain or other symptomatology is not credible.  *See, e.g., Da Rosa v. Secretary of Health & Human Servs.,* 803 F.2d 24, 26 (1st Cir. 1986).  This determination, however, must be supported by substantial evidence, and the administrative law judge must make specific findings as to the relevant evidence in determining that the plaintiff's testimony is not credible.  *Id.*  When supported with specific findings, an administrative law judge's determination that a claimant's subjective complaints of pain or other symptoms are not credible is entitled to deference.  *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

At hearing, the plaintiff gave detailed testimony regarding, *inter alia*, his claimed pain, his activities of daily living, and his functional restrictions.  *See* Record at 38-48.  The administrative law judge acknowledged, in her decision, that the plaintiff had alleged that his pain (i) had not improved with treatment, (ii) was so great that he had to lie down every day, and (iii) prevented him from lifting more than five pounds, sitting for more than twenty minutes at a time, standing for long periods, walking long distances, bending, turning, or going for long rides.  *See id.* at 22. Nonetheless, she found that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible[,]" *id.* at 23, on the bases that:

---

[6] Evidence that bears on the credibility of a claimant's subjective complaints includes (i) the claimant's activities of daily living, (ii) the location, duration, frequency and intensity of the pain or other symptoms, (iii) factors that precipitate and aggravate the symptoms, and (iv) treatments and their side effects.  *See* 20 C.F.R. § 404.1529(c)(3).

1.       "Although medical records document continued complaint of neuropathic pain in the left groin and thigh, the [plaintiff] has had only tenderness, positive tinel's sign to palpation, and questionable hypesthesias on examinations, and radiographic studies have failed to document any specific abnormalities."  *Id.* at 22 (citations omitted); *see also, e.g.*, *id.* at 219, 235, 240, 274, 276.

2.       Despite claims that all treatment modalities failed to relieve his pain, the plaintiff reported in March 2004 that Avinza dulled his pain.  *See id.* at 22; *see also id.* at 335.  In addition, medical records from January 2004 indicated that the plaintiff's pain was not quite as bad at that time, and treating sources reported in October 2006 that his pain was more manageable and his level of functioning had improved since being on narcotic pain medications.  *See id.* at 22; *see also id.* at 264, 409.[7]

3.       "[T]he physical and emotional demands of the [plaintiff's] activities of daily living contradict the nature and degree of impairment he alleges, and undermine his credibility."  *Id.* at 22.  While he asserted at hearing that his daily activities consisted mainly of watching television and eating, the evidence of record indicated he was "capable of performing a wide range of activities of daily living including caring for his personal needs, preparing meals, managing money, paying bills, driving an automobile, watching television without apparent difficulty concentrating, socializing with family members, and talking with friends on the phone."  *Id.* at 22-3; *see also, e.g., id.* at 121-24.

In arriving at the plaintiff's RFC, the administrative law judge went on to state that:

1.       Indications that the plaintiff was unable to return to work, contained in workers' compensation forms prepared by treating practitioners Michael J. O'Connell, M.D., and John Kane,

---

[7]The administrative law judge mistakenly gave the date of the January 2004 medical report as January 2005.  *Compare (continued on next page)*

CRNA, ARNP, failed to quantify any specific limitations and were unsupported by, and inconsistent with, the record as a whole and thus were given little weight. *See id.* at 23; *see also, e.g., id.* at 299, 371.[8]

2.     Great weight was given the opinion of Richard L. Levy, M.D., that the plaintiff could not drive a truck or perform heavy lifting but could work in an office doing light work activity on a full-time basis, an opinion found to be well-supported and consistent with the findings of state agency (DDS) reviewers. *See id.* at 23; *see also id.* at 277.[9]

3.     Considerable weight was afforded the opinions of the DDS reviewers that the plaintiff was capable of light work activity, opinions which were deemed well-supported and consistent with the record as a whole. *See id.* at 23; *see also id.* at 266-73, 279-86.

The plaintiff faults the administrative law judge's *Avery*/credibility analyses on grounds that she (i) omitted discussion of some *Avery* factors, (ii) misconstrued the record in discussing others, and (iii) misused her adverse credibility finding as support for her RFC finding. *See* Statement of Errors at 4.  The first and third points require little discussion.  The plaintiff cites no First Circuit authority for the proposition that an administrative law judge must slavishly discuss each *Avery* factor, and I find none.  The plaintiff relies on SSR 96-7p and *Strawhacker v. Apfel*, 17 F. Supp.2d 880, 884 (S.D. Iowa 1998), for the proposition that an adverse credibility finding is not the same as positive evidence in support of an RFC finding, and is insufficient in itself to establish that an

_____

Record at 22 *with id.* at 264.

[8] The administrative law judge described Kane as a "C.R.N.A." *See* Record at 23.  Kane, a New Hampshire practitioner, signed his charts in the capacities of both CRNA (Certified Registered Nurse Anesthetist) and ARNP (Advanced Registered Nurse Practitioner). *See, e.g., id.* at 309; *see also* N.H. Rev. Stat. Ann. § 326-B:18; *Stedman's Medical Dictionary* 428 (27th ed. 2000).

[9] Dr. Levy examined the plaintiff twice, in November 2003 and November 2004, in the capacity of an independent medical examiner ("IME") in connection with a workers' compensation claim. *See* Record at 274-78.  The administrative law judge mistakenly stated that Dr. Levy's work-capacity opinion was provided in November 2004; in *(continued on next page)*

individual is not disabled.  *See id*. at 4; *see also* SSR 96-7p at 137 ("[A] finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled."); *Strawhacker*, 17 F. Supp.2d at 885 ("The ALJ held that Plaintiff has a residual functional capacity for light work.  In the opinion of the Court, having reviewed the entire record, this finding was not based on medical evidence but rather on a credibility finding.  A credibility finding is not equivalent to proving residual functional capacity with medical evidence.") (citations omitted).  Nonetheless, in this case, the administrative law judge did not rely solely on a credibility finding to determine that the plaintiff was not disabled or that he retained the RFC for light work.  She relied heavily on the opinions of an examining physician, Dr. Levy, and two DDS reviewers in assessing RFC.  *See* Record at 23.

The plaintiff's second point, concerning alleged misconstruction of the record, is more complex.  He complains that the administrative law judge (i) understated examining practitioners' objective findings, which included notations of marked or significant tenderness and thereby corroborated, insofar as medically possible, his complaints of severe pain, (ii) overstated his ability

_____

fact, it was provided in November 2003.  *Compare id*. at 23 *with id*. 274-78.

to perform activities of daily living and, in any event, erred as a matter of law in discrediting allegations of disabling restriction on the basis of sporadic, transitory daily living activities, (iii) erred in according great weight to Dr. Levy's November 2003 work-capacity opinion, and (iv) erred in concluding that medications had helped control the plaintiff's pain to the point where his functionality had improved.  *See* Statement of Errors at 4-9.[10]

It is true, as the plaintiff underscores, that the medical evidence includes reports of significant or marked tenderness to palpation.  *See, e.g.,* Record at 222-23, 276, 321.  Nonetheless, I find the administrative law judge's reasons for discrediting his claims of disabling pain supported on the whole by substantial evidence and therefore conclude that her *Avery* and credibility findings are entitled to deference.  Dr. Levy, one of the examining practitioners who noted significant pain on palpation, *see id.* at 276, nonetheless stated in November 2003 that the plaintiff "could work in an office doing light work . . . full time[,]" although he could not drive a truck or do heavy lifting, *see id.* at 277.  The plaintiff complains that the administrative law judge wrongly accorded too much weight to that work-capacity opinion, given that (i) she ignored a subsequent report of Dr. Levy, issued a year later, that made no mention of work capacity, (ii) the 2003 Levy opinion was rendered at a time when Dr. Levy acknowledged the plaintiff had not reached a medical end point, (iii) nothing in the record indicates Dr. Levy, who was examining the plaintiff in connection with a workers' compensation proceeding, understood the meaning of "light" work as that term is defined

---

[10] To underscore his point that the administrative law judge did not appreciate the intensity of his client's pain, the plaintiff's counsel noted at oral argument that the plaintiff had gone so far as to seek an orchiectomy, or surgical removal of his left testicle, which he was advised likely would be unhelpful in relieving his suffering.  *See* Record at 317-18.  The question presented, however, is not whether the record contains evidence supportive of a finding of disability, but whether the administrative law judge, on the totality of the evidence, supportably found the plaintiff not to have suffered from disabling pain.

in the relevant regulation, 20 C.F.R. § 404.1567(b),[11] and (iv) the determination of RFC is reserved to the commissioner and hence, an examining source's opinion on that subject is not to be given any special significance per 20 C.F.R. § 404.1527(e)(2)-(3).  *See* Statement of Errors at 7-8.  The plaintiff suggests that, at the very least, pursuant to 20 C.F.R. § 404.1512(e), the administrative law judge should have recontacted Dr. Levy to reconcile his 2003 and 2004 opinions.  *See id*. at 8.

Although the administrative law judge was not required to accord any special significance to Dr. Levy's RFC opinion, *see, e.g*., 20 C.F.R. § 404.1527(e)(2)-(3), I perceive no error in her decision to accord it great weight.  Dr. Levy's 2004 report does not contradict his 2003 report on the subject of work capacity; it simply is silent on the question of the plaintiff's work capacity as of that time.  *Compare* Record at 274-75 *with id*. at 276-78.  There is no reason to believe that Dr. Levy's work-capacity opinion would have been any different in 2004 than it was in 2003.  In both years, he found that the plaintiff's main complaint was of pain in his left testicle, which could manifest itself as referred pain upon touching of the plaintiff's suprapubic area.  *See id*. at 274, 276.  The duty to recontact a medical source arises for clarification when, *inter alia*, "the report from your medical source contains a conflict or ambiguity that must be resolved[.]"  20 C.F.R. § 1512(e)(1).  That was not the case here.  While there is indeed no indication that Dr. Levy was aware of the manner in which light work is defined for Social Security purposes, it is significant that two DDS reviewers who do understand that definition and had the benefit of review of the medical records, including the Levy opinion, independently concluded that the plaintiff was capable of performing "light" work.

---

[11] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id*.  "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  *Id*.

*See* Record at 266-73, 279-86.

The administrative law judge also supportably found that the plaintiff's description at hearing of his activities of daily living as consisting primarily of eating and watching television, *see id.* at 44, 54, was contradicted by evidence of more wide-ranging activities, *see, e.g., id.* at 121-24 (plaintiff prepared meals, drove an automobile, socialized with family members, and talked with friends on the phone). This was a permissible credibility finding. *See, e.g.*, SSR 96-7p at 135 (listing "individual's daily activities" as among factors an adjudicator must consider when assessing credibility of individual's statements). The administrative law judge did not improperly conclude that the plaintiff's ability to perform certain activities of daily living, in itself, translated into a finding that he retained the RFC for light work. Rather, as noted above, she adopted expert medical reports so indicating. This materially distinguishes the instant case from the caselaw cited by the plaintiff. *See* Statement of Errors at 7; *Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995) ("We have repeatedly stated that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."); *Rohrberg v. Apfel*, 26 F. Supp.2d 303, 309-10 (D. Mass. 1998) (administrative law judge's RFC finding was not based on substantial evidence when predicated solely on (i) adverse credibility finding given plaintiff's activities of daily living and (ii) rejection of physicians' RFC reports); *Dedis v. Chater*, 956 F. Supp. 45, 54 (D. Mass. 1997) ("Of course, a claimant's ability to participate in limited household chores, in and of itself, does not prove he has the ability to perform substantial gainful activity.").

As concerns the efficacy of the plaintiff's medication, the administrative law judge committed no error in discrediting the plaintiff's claimed disabling level of pain by taking into account indications in his medical records that his narcotic regime had made his pain more

14

manageable and improved his level of functioning.  *See* Record at 22; *see also, e.g., id.* at 324, 335, 409; SSR 96-7p at 135 (effectiveness of medications among factors to be taken into account in considering credibility of individual's statements).  The plaintiff faults the administrative law judge for not querying him at hearing in February 2007 to develop this point, as she could have, *see* Statement of Errors at 9.  However, the plaintiff was represented by counsel, *see* Record at 28, who likewise could have queried him with respect to this point.[12]

In sum, the administrative law judge supplied specific reasons for discrediting the plaintiff's testimony concerning the extent of his disabling restrictions, and those reasons are supported by substantial evidence of record.  Accordingly, there is no basis on which to disturb her credibility/pain findings.

### C.  Treatment of Treating Sources

The plaintiff finally faults the manner in which the administrative law judge rejected the opinions, reflected in workers' compensation medical forms, of nurse practitioner Kane and a treating neurologist, Dr. Stone, that the plaintiff had no work capability.  *See* Statement of Errors at 9-12; *see also, e.g.*, Record at 299, 347.[13]  The administrative law judge explained that she had given the checkoff-box opinions of Kane and Michael J. O'Connell, M.D., little weight because those practitioners failed to quantify any specific limitations and their opinions were not supported by, or

---

[12] As an aside, the plaintiff also faults the administrative law judge for not taking into account his testimony that, despite the use of pain medications, he did not sleep well at night and was sleepy during the day, needing to take naps.  *See* Statement of Errors at 9.  This does not undermine the supportability of the administrative law judge's decision to discredit the plaintiff's testimony in part on the basis that the evidence showed his narcotic medication regime had efficacy in controlling his symptoms and improving his functionality.  In any event, the plaintiff testified that he did not need to nap every day.  *See* Record at 53-54.

[13] Dr. Stone completed one such form, while Kane completed twenty-four such forms from May 2003 to April 2006.  *See* Statement of Errors at 9-10 (citing Record at 299, 301, 304, 307, 338, 341, 344, 347, 351, 354, 359, 363, 366, 369, 371, 376, 378, 380, 382, 387, 390, 393, 397, 403, 406).

consistent with, the record as a whole. *See* Record at 23.[14]  The plaintiff complains that this rejection was too cursory to comply with the regulatory requirement (reflected in 20 C.F.R. § 404.1527(d)) that an administrative law judge give "good reasons" for rebuffing a treating source opinion.  *See* Statement of Errors at 11-12.  I discern no reversible error.[15]

As a threshold matter, Kane, a nurse anesthetist and nurse practitioner, does not qualify as a "treating source" for purposes of the regulation on which the plaintiff relies.  *See* 20 C.F.R. §§ 404.1502 (defining a "treating source" as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."); 404.1513(a) (excluding nurse practitioners and nurse anesthetists from list of providers recognized as "acceptable medical source[s]"), 404.1527(d)(2) (promising to "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

In any event, even if Kane did qualify as a "treating source," his opinion, and those of Drs. Stone and O'Connell, touched on a subject matter with respect to which decision is reserved to the commissioner, and even treating-source opinions are accorded no "special significance": the subject matter of disability.  *See id.* § 404.1527(e)(1), (3).

While medical opinions, even on subjects reserved to the commissioner and even from non-

---

[14] The administrative law judge evidently overlooked the fact that Dr. Stone had completed one of the multiple workers' compensation checkbox forms of record.  *See* Record at 347.  However, it is clear that her opinion as to that form would have been precisely the same: that it contained no specific restrictions and was inconsistent with the record as a whole. *See id.* at 23, 347.

[15] At oral argument, the plaintiff's counsel also contended, for the first time, that the administrative law judge should have recontacted Kane and O'Connell for clarification if she did not understand why, in their view, the plaintiff's condition was so seriously debilitating.  Counsel's failure to raise this point in his statement of errors effectuates a waiver.  *See, e.g., Farrin*, 2006 WL 549376, at *5.  In any event, a default in the duty to recontact is reversible error not only when an adjudicator cannot ascertain the basis of a treating source's opinion from the case record but also when that record is inadequate to make a determination of disability.  *See Frost v. Barnhart*, No. 03-215-P-H, 2004 WL 1529286, at *(continued on next page)*

16

treating sources, are to be assessed in accordance with certain enumerated factors, such as length of treatment relationship, whether the provider is a specialist, supportability of the opinion, and consistency with the record as a whole, *see id*. § 404.1527(d)(2)-(6); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2007) ("SSR 96-5p"), at 124 ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)."), there is no requirement that an administrative law judge discuss every one of those factors in his or her decision. Even in the context of a treating-source opinion, the requirement is merely that the adjudicator supply "good reasons" for the weight given that opinion. *See* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-5p at 127 (even as to issues reserved to commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"). Good reason was supplied for rejection of the workers' compensation opinions: that the medical providers had failed to identify specific restrictions and that the opinions were inconsistent with the record as a whole.[16] No more was required.[17]

---

*11 (D. Me. May 7, 2004) (rec. dec., *aff'd* June 3, 2004). The record was adequate for that purpose in this case.

[16] At oral argument, counsel for the commissioner asserted that the workers' compensation forms completed by Kane and others merely asked whether the plaintiff could return to work, meaning his past relevant work, and that their finding that he could not do so actually was consistent with the administrative law judge's own conclusions. While this is a plausible view of the evidence, *see, e.g.*, Record at 380, it is not the view expressed by the administrative law judge, who evidently saw the workers' compensation opinions as inconsistent with her conclusions, *see, e.g., id.* at 23. The task of the court is to judge the sustainability of the decision on the bases given, not on bases that might have been given. *See, e.g., Federal Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsel's *post hoc* rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (citations and internal quotation marks omitted).

[17] The plaintiff cites *Frost*, 2004 WL 1529286, in support of his argument that the administrative law judge's cursory rejection fails to pass muster. *See* Statement of Errors at 12. In *Frost*, this court rejected the notion, espoused in *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Frost*, 2004 WL 1529286, at *6. Here, as in *Frost*, even assuming *arguendo* that the *Newton* standard pertained, such a detailed discussion would not be necessary given that the record contains reliable medical evidence from an examining physician, Dr. Levy, contradicting the opinions of Kane and Dr. Stone that the plaintiff had no work capability. *See id.*; *(continued on next page)*

17

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be

**AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

_____
Record at 277.

18